In re Carl A. OSEEN, Debtor.

Carl A. OSEEN, Plaintiff,

v.

Joy WALKER, d/b/a JW Publications,
Defendant.

Bankruptcy No. 90–02091.
Adv. No. 91–6127.

United States Bankruptcy Court,
D. Idaho.

Nov. 13, 1991.

Stephen W. French, Boise, Idaho, for plaintiff.

W. Anthony Park, Park, Costello & Burkett, Boise, Idaho, for defendant.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

### BACKGROUND AND FACTS.

This adversary proceeding was submitted to the Court for decision on stipulated facts. Plaintiff, the debtor in a Chapter 13 case, and Defendant were formerly partners in a telemarketing publications business. In March, 1989, after a dispute between the parties over the business, they entered into a written agreement to dissolve the partnership. In the contract, Defendant agreed to purchase all of Plaintiff's interest in the business in consideration of a payment, in cash, of $64,000 to both Plaintiff and on his account to certain taxing authorities, and assumption of partnership debts. Plaintiff agreed, as part of the consideration for the contract, that he would not compete with Defendant in any similar business or produce any publications similar to those produced by the partnership in several western states for a period of five years. Finally, the agreement provides for both injunctive relief and liquidated damages in the event of a breach of the covenant not to compete by Plaintiff.

In February, 1990, Defendant sued Plaintiff in state court for violation of the noncompetition covenant. The state court issued a preliminary injunction against Plaintiff's publication activities. In June, 1990, Plaintiff filed for Chapter 13 relief. A plan was confirmed in October, 1990, providing payments to creditors over 36 months. After confirmation, on Defendant's motion, the Court modified the automatic stay to allow the parties to obtain a declaration by the state court as to whether the covenant not to compete in their contract was enforceable as a matter of state law. The state court decided the covenant was enforceable.

Plaintiff filed this adversary proceeding to obtain a judicial declaration that the partnership dissolution agreement, including the covenant not to compete, is an "executory contract" which can be rejected in his Chapter 13 plan, and that Defendant's rights under the contract constitute a "claim" which is dischargeable through Plaintiff's performance of the plan. In effect, then, Plaintiff seeks to be excused from the restrictions on competition with Defendant during the pendency of the plan, and to discharge her rights through the bankruptcy upon plan completion.

### THE ISSUES.

1. *Is the Dissolution Agreement an Executory Contract?*

The first issue the parties ask the Court to address is whether the partner-

ship dissolution agreement containing the non-competition provision is an "executory contract" for purposes of assumption or rejection under Section 365 of the Bankruptcy Code. Plaintiff urges that it is, and presumably if so, desires to reject the contract. Defendant argues the contract is not executory.

As a starting point, the Court notes that Debtor's confirmed plan contains a provision addressing executory contracts. *See* ¶ 2(d), Chapter 13 Plan, filed with the Court on July 18, 1990. The plan language, in reference to whether Plaintiff intended to assume or reject any such contract, provides "none." While clearly a Chapter 13 plan may provide for assumption or rejection of executory contracts, 11 U.S.C. § 1322(b)(7), Debtor's plan does not attempt to do so. Plaintiff, as the debtor, is bound by the provisions of his confirmed plan, 11 U.S.C. § 1327(a), although Plaintiff by this action implies that the right to reject the partnership dissolution agreement may still exist. Therefore, there is at least an issue, not addressed by the parties, as to whether rejection of the contract is still available to Plaintiff given the procedural status of the case.[1] While this issue is troubling, it need only be resolved if the subject agreement is "executory" for bankruptcy law purposes, which the Court now determines it is not.

The parties spend considerable time in their briefing urging adoption of differing approaches to defining executory contracts under Section 365. Plaintiff contends that the Court should not adopt the so-called "Countryman" definition—that a contract is executory if the obligations of both parties are so far unperformed that the failure of either to complete performance would constitute a material breach of the contract.[2] He would prefer the Court utilize a "functional approach" to defining the term, focusing on whether allowing assumption or rejection of a given contract would be consistent with the purposes and goals of the Bankruptcy Code.[3] Reference is made in the legislative history to Section 365 wherein the committees report that the phrase "executory contract" "generally includes contracts on which performance remains due to some extent on both sides."[4] The case law of this circuit has generally adopted the "Countryman definition."[5]

The Court need not wrestle with the niceties of the definition, because regardless of the definition employed, the contract here before the Court is not executory. The only performance remaining for Plaintiff as the seller of his partnership interest was his duty not to compete with Defendant. Such has been found, standing alone, to be insufficient to make his side of the contract executory.[6] More importantly, there is clearly no remaining outstanding performance obligation on Defendant's part. Recall, this was a contract for the sale of Plaintiff's interest in a business for cash, all of which was paid upon closing of the agreement. In short, this contract is not "executory" for purposes of Section 365

---

**1.** Section 1329(a) allows post-confirmation modification of a plan to increase or reduce payments; extend or reduce the time for payments; or to alter the payment to a creditor to take into account payments received by the creditor other than under the plan. The statute does not address whether a plan may be modified to accept/reject an executory contract after confirmation.

**2.** Countryman, Executory Contracts in Bankruptcy, 57 Minn.L.Rev. 439, 460 (1973).

**3.** Cases utilizing this approach cite as its goals allowing a debtor to escape burdensome contractual obligations while trying to recover financially, while also creating a technical "breach" of a contract allowing the other party to the rejected contract to file a creditor's claim.

*See In re Jolly,* 574 F.2d 349, 350 (6th Cir.1978); *In re Norquist,* 43 B.R. 224, 225–226 (Bankr. E.D.Wash.1984).

**4.** H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 58 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5844, 6303.

**5.** *In re Pacific Express, Inc.,* 780 F.2d 1482 (9th Cir.1986); *In re Sun Runner Marine, Inc.,* 116 B.R. 712 (9th Cir. BAP 1990), *aff'd in part and vacated in part,* 945 F.2d 1089 (9th Cir.1991). *See also In re Sunset Developers,* 87 I.B.C.R. 18, 21 (Hagan, J.).

**6.** *See In Re Bluman,* 125 B.R. 359, 362 (Bankr. E.D.N.Y.1991); *In re Cutters, Inc.,* 104 B.R. 886, 890 (Bankr.M.D.Tenn.1989).

and therefore it cannot be rejected under the bankruptcy law, even if that right were still available to Plaintiff.

2. *May Plaintiff's Obligations Under the Non–Competition Covenant Be Discharged Under His Confirmed Chapter 13 Plan?*

■ The covenant not to compete, because it is not an executory contract that may be rejected under Section 365, therefore remains a viable obligation of Plaintiff. In light of this, the second argument made by Plaintiff is that his obligations under the contract, including the covenant, can be discharged in his bankruptcy case. In other words, Plaintiff asserts that the rights of Defendant under the non-competition covenant constitute a "claim" for bankruptcy purposes as defined in Section 101(5)(B)[7] that may be discharged under Section 1328.

Once again, there is a practical problem with Plaintiff's request for relief. By the terms of the dissolution agreement, the covenant is binding on Plaintiff for a period of five years from the date of the agreement. It will expire by its own terms on March 10, 1994. By contrast, the term of the confirmed plan in this case, filed by Plaintiff in July, 1990, is 56 months. *See* ¶ 1., Order Confirming Modification of Plan by Debtor, entered October 3, 1990. Therefore, the non-competition covenant will lapse under the contract several months before Plaintiff completes performance of the plan. Under Section 1328(a), a debtor is not entitled to a discharge in Chapter 13 until the plan has been completed. Plain-

tiff's request to determine the dischargeability of the covenant is consequently premature because the plan has not been completed. Even assuming completion occurs per the terms of the plan, the discharge issue would likely be moot by virtue of the expiration of the covenant.

■ The above would end the Court's consideration of the matter were this a simple question of dischargeability. While all concede that the liquidated money damages provided by the contract constitute a dischargeable claim,[8] Plaintiff argues that Defendant should also be restricted to treatment and payment through the plan on her injunctive rights. Defendant contends she is entitled to continue enforcement of her injunction against Plaintiff.

■ While the intended scope of the term "claim" under the Bankruptcy Code is broad,[9] whether Defendant's legal right to equitable relief against Plaintiff under the contract is a claim for bankruptcy purposes turns on whether Plaintiff's breach of the covenant not to compete "gives rise to a right to payment...." 11 U.S.C. § 101(5)(B). Rights to equitable relief for breach of performance of a contract that do not give rise to a right to payment are not "claims" for bankruptcy purposes and are therefore not susceptible to discharge.[10]

■ Turning to state law to define the nature of the remedy for breach of a non-competition covenant, damages may be recovered for provable loss occasioned by a

---

7.  **§ 101.  Definitions.**

    In this title—

    ....

    (5) "claim" means—

    ....

    (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

8.  The contract provides for both equitable relief and liquidated damages in the event of a breach of the noncompetition covenant. Any claim for the liquidated damages constitutes a claim un-

der Section 101(5) of the Code, something which Defendant does not dispute. In fact, Defendant has filed a proof of claim for the amount of the liquidated damages, to which Plaintiff has not objected.

9.  Compare *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) (criminal restitution obligation constitutes a claim for bankruptcy purposes), with *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985) (court order obliging debtor to remedy state environmental law violations is not a claim).

10.  2 L. King, Collier on Bankruptcy, ¶ 101.05 at 101.32 (15th ed. 1991).

breach under appropriate facts.[11] Such is an adequate remedy to compensate for impairment of goodwill and loss of profits. *Dunn,* 105 Idaho at 356, 670 P.2d at 61; *Vancil v. Anderson,* 71 Idaho 95, 227 P.2d 74 (1951). However, it is also apparent that with proper proof, the equitable remedy of injunction is available to the beneficiary of a breached covenant not to compete to prevent against *future* loss. In order to obtain such an injunction, the injured party must show that the enforcement of the covenant is reasonable as against the covenantor, covenantee, and the general public, that it is not against public policy, and that "any detriment to the public interest in the possible loss of the services of the covenantor is more than offset by the public benefit arising out of the preservation of the freedom of contract." *Dick,* 107 Idaho at 933, 693 P.2d at 1135, *quoting Marshall v. Covington,* 81 Idaho 199, 203, 339 P.2d 504, 506 (1959). Clearly, then, in this setting, equitable relief serves a markedly different purpose than damages, and imposition of an injunction will likely not be available except where an award of money damages (i.e., a right to payment) is inadequate.[12]

In this case, the parties anticipated the obvious difficulty in calculating any actual damages associated with a breach of the non-competition covenant by insertion of a liquidated damages clause in their agreement. However, such is not an effective remedy for any future breach of the covenant, and the state court found Defendant met the burden of proving her entitlement to an injunction.[13] Therefore, under the facts presented here and in light of the state court's judicial determination, it is clear that the equitable remedy (i.e., the injunction) provided in Defendant's favor in the contract did not give rise to a right to payment, and Plaintiff's obligation to refrain from competing with Defendant is not a claim that may be discharged.

## CONCLUSION.

The contract between Plaintiff and Defendant is not an executory contract which may be rejected by Plaintiff under Section 365 of the Bankruptcy Code. In addition, Defendant's right to an injunction against Plaintiff prohibiting him from violating the covenant not to compete is not a claim which may be discharged in bankruptcy. Defendant's claim for liquidated money damages is a "claim" under Section 101(5), for which Defendant is limited to the right to receive payments under Plaintiff's confirmed plan.

Defendant is entitled to judgment dismissing Plaintiff's Complaint with prejudice. Defendant may also submit a separate order in the bankruptcy case terminating the automatic stay to the extent necessary to allow Defendant to enforce the injunction imposed by the state court by all legal means attributable to any acts by Plaintiff after entry of this decision. This Memorandum constitutes the Court's findings of fact and conclusions of law. F.R.B.P. 7052.

**11.** *See Dick v. Geist,* 107 Idaho 931, 935, 693 P.2d 1133, 1137 (Ct.App.1985); *Dunn v. Ward,* 105 Idaho 354, 356–357, 670 P.2d 59, 61–62 (Ct.App.1983).

**12.** As the state courts have noted, actual damages due to breach of a covenant are "notoriously difficult" to prove. *See Davis v. Gage,* 106 Idaho 735, 739, 682 P.2d 1282, 1286 (Ct.App. 1984).

**13.** Decision and Order for Preliminary Injunction, at 6 (1/7/91). At least one Court has expressed its opinion that, because of a bankruptcy court's "equitable configuration", a claim for breach of a covenant not to compete may be subject to determination and treatment in bank-

ruptcy court even if it could not be reduced to a money claim "under the rigid application of evidentiary rules in state court." *See Norquist,* 43 B.R. at 231. Under Idaho law, in order to sustain a claim for money damages, the offended party to the contract need only prove damages with reasonable certainty outside the realm of speculation. *Dunn,* 105 Idaho at 356–357, 670 P.2d at 61–62. This hardly appears to the Court to be an overly "rigid" requirement. In addition, Plaintiff has offered nothing to the Court in this record to suggest that any injury suffered by Defendant as a result of his breach could be adequately compensated in money damages.