In the Matter of Barry Stuart
UDELL, Appellant,

v.

The STANDARD CARPETLAND
USA, INC., Appellee.

No. F 92–242.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 20, 1993.

Robert Nicholson, Douglas Adelsperger, Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, IN, for appellee.

Mark A. Warsco, Warsco & Brogan, Fort Wayne, IN, for appellant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on Appellant/Debtor Barry Stuart Udell's appeal from the September 17, 1992 Order and Decision of the United States Bankruptcy Court for the Northern District of Indiana, the Honorable Robert E. Grant, Judge. Udell appeals the bankruptcy court's granting of a motion for relief from the automatic stay, which had been filed by the Standard Carpetland USA, Inc. ("Carpetland"). Udell filed his Appellant's Brief on November 20, 1992. Carpetland filed its Appellee's Brief on December 4, 1992, and in response, Udell filed a Reply Brief on December 14, 1992. The court heard oral argument in this matter on January 7, 1993, at which time it took the matter under advisement. For the following reasons, the decision and order of the bankruptcy court is REVERSED, and the matter is REMANDED to the bankruptcy court for proceedings consistent with this order.

### Factual Background

Udell, the Vice President/General Manager of Carpetland, managed Carpetland's store located in Fort Wayne, Indiana. On August 21, 1989, Udell signed an employment contract which, at paragraph 11, included a covenant not to compete. That agreement provides that for three years after leaving Carpetland, Udell is prohibited from engaging in any business located within fifty miles of Fort Wayne which conducts business similar to Carpetland. The covenant contained the following provision concerning Carpetland's remedy in the event of possible breach by Udell:

> In the event of Udell's actual or threatened breach of the provisions of this paragraph 11, Carpetland shall be entitled to an injunction restraining Udell as well as reimbursement for reasonably [sic] attorneys fees incurred in securing said judgment and stipulated damages in the sum of $25,000.00.

(punctuation as in original).

Among other matters, the employment contract required thirty days written notice by either party intending to terminate the contract, permitted Carpetland to immediately terminate Udell upon notice of Udell's intent to terminate, and permitted Carpetland to substitute pay in lieu of notice. The contract also contained a provision related to Udell's option to purchase an interest in Carpetland, and provisions related to redemption of Udell's shares in Carpetland.

Udell gave notice of his resignation from Carpetland on April 27, 1992. Shortly thereafter, on May 4, 1992, Carpetland dismissed Udell from employment. Udell promptly purchased a small, local carpet store, which he alleges does not compete in the same market as Carpetland. Udell then filed a state court action seeking damages for breach of the employment contract, and Carpetland counterclaimed, seeking damages and an injunction enforcing the restrictive covenant. The Allen Superior Court granted Carpetland's request for

a preliminary injunction on June 9, 1992, which injunction Udell is presently appealing in the state appellate courts.

On June 13, 1992, a few days after the preliminary injunction issued, Udell filed a Chapter 13 bankruptcy petition.[1] Wishing to enforce its preliminary injunction, and believing that Udell was violating the terms of that injunction, Carpetland promptly filed its motion for relief from the automatic stay on June 16, 1992. On September 17, 1992, United States Bankruptcy Court Judge Grant issued his decision and order, awarding Carpetland relief from the stay. Udell now appeals from that order.

## DISCUSSION

The Bankruptcy Code permits a party in interest to receive relief from the automatic stay[2] when necessary to protect the interests of that party. 11 U.S.C. § 362(d).[3] In appealing the bankruptcy court's order granting Carpetland relief from the stay, Udell basically makes three arguments.[4] First, he argues that the employment contract is an executory contract, which he has rejected in its entirety, and that rejection of the contract means that Carpetland cannot enforce its restrictive covenant through an injunction. Second, Udell argues that the right to enforce the restrictive covenant is a debt dischargeable under his proposed Chapter 13 plan, and therefore, Carpetland cannot enforce its alleged right to an injunction, and must pursue its remedy in bankruptcy as would any other unsecured creditor. Third, Udell argues that the bankruptcy court abused its discretion by not giving sufficient consideration to Udell's inability to get a "fresh start", or to

the unequal treatment of other creditors which will result from the lifting of the stay.[5] Therefore, Udell argues, the bankruptcy court should be reversed, and Carpetland should not be granted a stay which would permit it to enforce the preliminary injunction.

The issue of whether the employment contract is an executory contract which, by means of rejection, has canceled Carpetland's right to an injunction, and the issue of whether the preliminary injunction constitutes a debt dischargeable in bankruptcy are issues of law. This court reviews such matters of law *de novo*. *United States v. Stowe*, 121 B.R. 549, 551 (N.D.Ind.1990).

### *Effect of Rejection*

Pursuant to 11 USC § 365, a bankruptcy estate may reject an executory contract, a contract under which the obligations of the debtor and the creditor are substantially unperformed. Carpetland argues that the employment contract is not executory since Udell had already terminated his employment under it. The bankruptcy court did not address this matter, instead, finding that for purposes of ruling on the motion for relief from the stay, whether the employment contract was executory and could be rejected was of no consequence. Carpetland essentially agrees with this finding.

Udell argues that the bankruptcy court erred in finding that it does not matter whether the employment contract was executory. Udell maintains that the effect of his asserted rejection of the allegedly executory contract is to relieve him of the bur-

---

1. "Chapter 13 of the Bankruptcy Code provides a reorganization remedy for consumer debtors and proprietors with reasonably small debts." *Johnson v. Home State Bank*, — U.S. —, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991).

2. The automatic stay applies to restrain the commencement or continuation of any proceeding which was or could have been brought against the debtor prior to the commencement of the bankruptcy action, and applies to restrain the enforcement of a judgment which was obtained against the debtor prior to the commencement of the bankruptcy action. 11 USC § 362(a).

3. The Bankruptcy Code permits the court to grant a party in interest relief from the automatic stay "for cause, including lack of adequate protection of an interest ..." 11 USC § 362(d).

4. Udell also asserts that the bankruptcy court committed error by "not considering the contractual obligations of the parties as a whole." The court finds absolutely nothing in the record which supports this allegation.

5. As the court's resolution of the second issue is dispositive, Udell's third issue is moot.

den of any further performance under the entire contract, including relief from the burden of the restrictive covenant found therein.

■ This court agrees with the bankruptcy court's conclusion that rejection of a contract does not rescind the contract or the obligations found therein, but rather, rejection constitutes nothing more than a pre-petition breach of the contract. As another bankruptcy court recently reasoned:

> Consistent with the bankruptcy law's general deference to state-law rights in or to specific property, rejection of a contract does not terminate such rights that arise from rejected contracts. Rejection is not itself an avoiding power. Rights in property that arise from a contract may, however, be terminated by bankruptcy law's normal avoiding powers.

*In re: Drexel Burnham Lambert Group, Inc.,* 138 B.R. 687, 709 (Bankr.S.D.N.Y. 1992), *quoting* Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook,* 62 U.Colo.L.Rev. 1, 17 (1991).

Therefore, as the bankruptcy court held, regardless of whether the contract is executory and could be rejected by Udell, the case turns on whether Udell's potential Chapter 13 discharge would encompass the restrictive covenant's obligation, since rejection does not destroy the contract obligations.

### The Nature of the Covenant Not to Compete

The central issue in this appeal concerns whether the covenant not to compete obligation is a "claim" dischargeable in Udell's Chapter 13 plan. Relief from the automatic stay is granted only when necessary to protect the interests of a party in interest. 11 USC § 362(d), *supra* at n. 3. If the restrictive covenant is a "claim", Carpetland may seek to protect its interests and pursue its remedy as would any other creditor involved in a bankruptcy proceeding, and therefore, Carpetland would have no right to relief from the stay.

A Chapter 13 discharge applies to "all *debts* provided for in the plan." 11 USC § 1328(a). The Bankruptcy Code defines "debt" as "liability on a claim". 11 USC § 101(12). The Code further defines "claim" as the:

(A) right to payment, ... or

(B) right to an equitable remedy for breach of performance *if such breach gives rise to a right to payment,* whether or not such a right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 USC § 101(5) (emphasis added).

Thus, if upon Udell's breach of the restrictive covenant, Carpetland's right to an injunction for breach does not also enable Carpetland to seek payment for that breach, the right to an injunction is not a claim, and consequently, not a debt dischargeable in Udell's proposed Chapter 13 plan. If Carpetland's right is not a dischargeable "debt", Carpetland may be entitled to relief from the stay in order to enforce its preliminary injunction, as such relief would be necessary to protect Carpetland's interest. If, however, upon Udell's breach of the restrictive covenant, Carpetland's right to an injunction for breach also enables Carpetland to seek payment for that breach, Carpetland's right to an injunction to enforce the restrictive covenant is a claim, and consequently, is a debt dischargeable in Udell's proposed Chapter 13 plan. Then, Carpetland would be forced to seek protection of its interest as would any other creditor, and relief from the stay would be improper.

■ Courts should broadly construe the term "claim" when determining whether the particular interest at issue gives rise to a right to payment. *Johnson,* —— U.S. at ——, 111 S.Ct. at 2154 (a mortgage interest which survives the discharge of a debtor's personal liability, and which may be asserted only in the form of a right to proceeds from the sale of debtor's property is a "claim"). Absent an overriding federal interest, the state law should provide guidance as to whether a property interest

arises in a bankrupt's estate.[6] *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *see also Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 791 F.2d 524, 532 (7th Cir.1986). Furthermore, the court agrees with the holding in *In re: Audra–John Corp.*, 140 B.R. 752, 757 (Bankr. D.Minn.1992), which specifically concluded that state, not federal law identifies remedies available when seeking to enforce a covenant not to compete against the debtor (finding no right to relief from the stay). Thus, although the court must apply a broad construction to the term "claim", in order to determine whether a breach which results in the right to an equitable remedy (Udell's violation of the restrictive covenant), can "give rise to a right to payment" under 11 USC § 101(5)(B), the court consults state law for an answer.

■■■ Under Indiana law, irreparable harm, which is harm incapable of reduction to monetary relief, is necessary to warrant the issuance of an injunction to enforce a restrictive employment covenant. *Fumo v. Medical Group of Michigan City, Inc.*, 590 N.E.2d 1103, 1108 (Ind.App.1992). In Indiana, a covenant not to compete will be enforced if: 1) reasonably necessary to protect the employer's business; 2) not unreasonably restrictive of the employee; and 3) not contrary to public policy. *Slisz v. Munzenreider Corp.*, 411 N.E.2d 700, 704 (Ind.App.1980). Thus, such a covenant will be enforced through injunctive relief only if monetary damages are inadequate and the covenant is "reasonable with respect to the covenantee, the covenantor and the public interest." *Fumo*, 590 N.E.2d at 1109. Because the extent of damages resulting from *future* breaches of restrictive employment covenants are usually extremely difficult to prove with any degree of certainty, money damages for such future violations are usually deemed inadequate. As a result, reasonable covenants not to compete are often enforced through the issuance of injunctions against such future competition.

■■■ Udell argues that because of the liquidated damages provision of the restrictive covenant, Carpetland has a right to payment, and thus, no right to relief from the stay. Carpetland argues that the liquidated damages may compensate them only for *past* violations of the covenant, and damages cannot possibly be calculated as to any *future* violations. Carpetland concludes that since the liquidated damages cannot compensate it for future violations, the breach as to future violations does not give rise to payment, and thus, it has a right to relief from the stay. However, Carpetland's argument ignores the actual language employed by Carpetland in its contract with Udell. The language of that restrictive covenant plainly provides: "In the event of Udell's actual *or threatened breach* ... Carpetland shall be entitled to an injunction ... as well as ... stipulated damages in the sum of $25,000.00." (emphasis added).

The "threatened breach" mentioned in the contract can be interpreted only as a reference to *future* violations. Thus, by this contract, Carpetland and Udell have agreed that in the event of past or future violations of the covenant ("Udell's actual or threatened breach"), Carpetland may pursue an injunction "as well as" money damages stipulated at $25,000. As a result, the usual reason for granting such injunctions, which is, that money damages for such future violations are inadequate because of the inability to prove the extent of damages resulting from future breach of the restrictive employment covenants, does not apply.[7]

---

6. Udell argues that a federal rule should be applied to determine whether Udell's breach which resulted in Carpetland's preliminary injunction can "give rise to a right to payment." This argument relies on the expansive *dicta* of *Johnson*, —— U.S. ——, 111 S.Ct. 2150, and cases cited therein, urging broad interpretation of the Bankruptcy Code. While *Johnson* does counsel an expansive reading of the Code, the case clear-

ly does not hold that a federal rule, rather than state law, should be applied to determine whether breach resulting in the right to an injunction gives rise to a right to payment.

7. Udell also argued that money damages can adequately compensate Carpetland for Udell's alleged violation of the restrictive covenant simply because the restrictive covenant contained a

Therefore, the court finds that Udell's breach does give rise to a right to payment, and accordingly, is a claim, as defined at 11 USC § 101(5).

The court is aware that bankruptcy courts applying the law of other states have held that when covenants not to compete are breached, employers may normally seek effective remedies only through injunctive relief; and therefore, when the state courts in the related litigation found that the employers were entitled to injunctions, the injunctions were not "claims" within the meaning of the Bankruptcy Code. *See In re: Oseen*, 133 B.R. 527, 531 (Bankr.D.Idaho 1991); *In re: Cox*, 53 B.R. 829, 832 (Bankr.M.D.Fla.1985); and *In re: Cooper*, 47 B.R. 842 (W.D.Mo.1985). However, none of those cases involved a stipulated damages clause which addressed past *as well as* future breach ("actual or threatened breach"), such as was fashioned by Carpetland in this case. The court in *In re: Oseen* specifically relied upon the liquidated damages clause used in that case as being "not an effective remedy for any future breach." *Id.*, 133 B.R. at 531. Furthermore, in *In re: Cox*, 53 B.R. 829, and *In re: Cooper*, 47 B.R. 842, the cases apparently did not involve liquidated damages clauses at all. Therefore, those three cases are sufficiently distinct from the instant case so as to not create conflict.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's Order and decision is REVERSED, and the matter is REMANDED to the bankruptcy court for proceedings consistent with this order.

---

stipulated liquidated damages clause. However, the mere fact that a restrictive covenant contains a provision for liquidated damages in addition to injunctive relief in the case of breach, does not in itself render the party seeking enforcement unable to obtain the injunction. *See Duckwall v. Rees*, 119 Ind.App. 474, 86 N.E.2d 460, 462–463 (1949); 5A *Corbin on Contracts*, § 1213 (1964).

If the contract provides that the liquidated damages may be a substitute for injunctive relief, "equity will deny [relief] and leave the aggrieved party to his remedy at law." *Duckwall*, 86 N.E.2d at 462. The instant liquidated damages provision does not give either party the ability to choose between injunctive or monetary relief. The covenant explicitly provides that Carpetland is entitled to an injunction "as well as" $25,000 in "stipulated damages". As the bankruptcy court found, this provision envisions that Carpetland's remedy for breach includes both, and not a choice between the two: "[T]his monetary relief [liquidated damages] is in addition to, rather than in lieu of, its right to injunctive relief." *In re: Udell*, 149 B.R. 898, 906, n. 1 (Bankr.N.D.Ind.1992).

However, the fact that Carpetland may seek both an injunction and money damages as relief for Udell's breach of the restrictive covenant does not necessarily lead to the outcome determinative conclusion that Carpetland's right to an injunction for Udell's breach does not give rise to Carpetland's right to a money payment. The relevant inquiry under § 101(5)(B) is whether the breach gives rise to a right to payment. This is a different inquiry than the question of whether liquidated damages exterminate Carpetland's right to an injunction. It is solely because the specific language employed by these parties contemplates liquidated damages for future breach that the right to payment arises in this case.