**In re Barry G. HUGHES, Debtor.**

**Bankruptcy No. 93–32657.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

March 30, 1994.

Jeffrey P. Albert, Dayton, OH, for debtor.

Dawn S. Garrett, Dayton, OH, for movant.

George W. Ledford, Englewood, Ohio, Chapter 13 Trustee.

## DECISION AND ORDER GRANTING MOTION OF MENDELSON ELECTRONICS COMPANY, INC., TO MODIFY AUTOMATIC STAY OF 11 U.S.C. § 362(a)

WILLIAM A. CLARK, Bankruptcy Judge.

Before the court is a "Motion for Relief from Automatic Stay" (Doc. # 10) filed by Mendelson Electronics Company, Inc. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G)—motions to terminate, annul, or modify the automatic stay.

### FACTS

On July 10, 1989, Barry G. Hughes ("Debtor") entered into an "Employment and Non–Disclosure Agreement" with Mendelson Electronics Company, Inc. ("Movant") whereby Debtor became employed by Movant as a Sales Manager for a base salary of $50,000 per year. The contract provided that the Debtor's employment could be terminated upon 14 days written notice by either party. Regardless of the manner of termination, the contract provided that Section 6 of the contract ("Confidentiality") and Section 7 ("Covenant Not to Compete") "remain in full force and effect." Section 7 reads, in part, as follows:

> The Employer and Employee agree that the foregoing restrictions shall apply for a period of ten (10) years from the date of termination of the employee's employment with Employer for any reason and shall be effective throughout the United States of America, it being recognized by Employer and Employee that the business of Employer is nationwide both in terms of purchase and sale of surplus electronics as previously described.

Debtor submitted a written "Notice of Termination" to the Movant on June 8, 1993, and resigned as Movant's Sales Manager. On July 20, 1993, Debtor filed a petition in bankruptcy pursuant to chapter 13 of the Bankruptcy Code.

Movant has moved the court to modify the automatic stay of § 362(a) of the Bankruptcy Code so that Movant may "seek injunctive relief in State Court against the Debtor ... in relation to the non-disclosure and non-compete contract with the debtor" (Doc. # 10).

### CONCLUSIONS OF LAW

Debtor contends that the non-competition agreement is an executory contract, that he is rejecting such contract, and therefore Movant should merely be treated as a prepetition creditor with a disputed and un-

liquidated claim. Although § 365 of the Bankruptcy Code permits rejection of executory contracts, the Bankruptcy Code does not define "executory contract." Bankruptcy Courts, however, have frequently utilized a definition formulated by Professor Vern Countryman, who defines an executory contract as:

> A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other. Countryman, *Executory Contracts in Bankruptcy, Part I,* 57 Minn.L.Rev. 439, 460 (1973).

For § 365 to be applicable, there must, of course, be a contract in existence. If a contract has been terminated prior to the commencement of the bankruptcy case, then there is no contract for a trustee or debtor to reject. 2 *Collier on Bankruptcy* § 365.02 (15th ed. 1993). Here, Debtor terminated his employment relationship with Movant prior to filing bankruptcy. As a result, the contract is not executory in the sense of Professor Countryman's definition and is, thus, not subject to rejection under § 365. *Matter of Howard Industries, Inc.,* 56 B.R. 5, 6 (Bankr. N.J.1985). Although questions remain as to whether the noncompetition covenant is enforceable or whether Movant is entitled to damages, the contract was otherwise at an end prior to the filing of Debtor's petition in bankruptcy:

> That [Debtor] remains subject to the terms of the restrictive covenant (assuming its enforceability under state law) does not make the contract executory within the meaning or intent of § 365 of the Bankruptcy Code. *In re Hawes,* 73 B.R. 584, 586 (Bankr.E.D.Wisc.1987).

It has also been found that for purposes of determining whether to modify the automatic stay it is of no consequence whether a contract is classified as executory or not. This is because rejection of a contract does not rescind a contract or the obligations found therein (e.g., a restrictive covenant):

> [R]ather, rejection constitutes nothing more than a prepetition breach of the con-

tract. As another bankruptcy court recently reasoned:

> Consistent with the bankruptcy law's general deference to state-law rights in or to specific property, rejection of a contract does not terminate such rights that arise from rejected contracts. Rejection is not itself an avoiding power. Rights in property that arise from a contract may, however, be terminated by bankruptcy law's normal avoiding powers.

*In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 687, 709 (Bankr.S.D.N.Y. 1992), *quoting* Andrew, *Executory Contracts Revisited; A Reply to Professor Westbrook,* 62 U.Colo.Rev. 1, 17 (1991).

> Therefore, . . . regardless of whether the contract is executory and could be rejected by [Debtor], the case turns on whether [Debtor's] potential Chapter 13 discharge would encompass the restrictive covenant's obligation, since rejection does not destroy the contract obligations. *Udell v. The Standard Carpetland USA, Inc. (In re Udell),* 149 B.R. 908, 911 (N.D.Ind.1993).

The central issue, then, is whether a covenant not to compete is a "debt" subject to discharge in the Debtor's chapter 13 plan. Generally, after a chapter 13 debtor completes all plan payments, the court "grant[s] the debtor a discharge of all *debts* provided for by the plan. . . ." 11 U.S.C. § 1328(a). It is important to note that the Bankruptcy Code's discharge relieves a debtor of *debts*— not of all obligations. A "debt" is a "liability on a claim," 11 U.S.C. § 101(12) and a "claim" is defined as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance *if such breach gives rise to a right to payment,* whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. 11 U.S.C. § 101(5) (emphasis supplied).

**106**

After reviewing the case authorities supplied by counsel, this court is persuaded that the approach utilized by the Hon. Barbara J. Sellers, a United States Bankruptcy Judge in this district, is correct:

[S]imply finding an affirmative duty to perform an act does not give rise to a nondischargeable obligation. Rather, the analysis should focus on the substance of the affirmative duty. If an expenditure of money is required to perform the obligation, then the affirmative duty gives rise to a "claim" and, thus, the underlying liability may be subject to the discharge issued pursuant to 11 U.S.C. § 727(b). If no other provision of the Bankruptcy Code excepts this "debt" from the operation of the discharge, it will be within the scope of the discharge.

On the other hand, if no expenditure of money is required to comply with the affirmative duty under the injunction, then there may not be a "debt" in the bankruptcy context. If there is no "debt," discharge of that underlying obligation will not occur. *May v. Charles Booher & Associates, Inc. (In re May)*, 141 B.R. 940, 943 (Bankr.S.D.Ohio 1992).

 Based on *In re May*, this court finds that the Movant should be permitted to pursue an injunction against Debtor with respect to breaches of the covenant not to compete. Although this court believes that the covenant's ten year, nationwide provision is manifestly unreasonable, the court also "believes that the state courts of Ohio are the more appropriate forum to interpret the employment agreements and determine if breaches occurred." *Id.* at 944.

The state court should determine whether the employment agreement ... [is] enforceable under applicable state law and whether [Debtor] breached any of the "no compete" covenants. Further, the state court should determine whether [Movant] is entitled to enjoin [Debtor] from any further breaches or whether [Movant] may be adequately compensated by monetary damages. Any damages which arose from either prepetition or postpetition breaches of the employment agreements, however, have been included in the discharge issued

... and are covered by the resulting discharge injunction of § 524(a). *Id.* at 945.

For the foregoing reasons, Movant's motion is GRANTED, and it is therefore ORDERED that the automatic stay of § 362 is modified for the limited purpose of permitting Mendelson Electronics Company, Inc., to seek injunctive relief against Barry G. Hughes in state court.