**In re Brian HOWE, Debtor.**

**Bankruptcy No. 98–4128–9P3.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 6, 1998.

See also 221 B.R. 555, 221 B.R. 557.

John D. Goldsmith, Tampa, FL, for Debtor.

W. Patrick Ayers, Tampa, FL, Jeffrey Hoffman, Francine Miller, New York City, Steven Weiss, Mill Neck, NY, for Movant.

Terry Smith, Bradenton, FL, Trustee.

## ORDER DENYING DEBTOR'S EMERGENCY SECOND AMENDED MOTION TO APPROVE AND NOTICE OF REJECTION OF EXECUTORY CONTRACTS WITH WARDPINE, ET AL.

ALEXANDER L. PASKAY, Chief Judge.

One would assume that if a debtor has been in bad company, he would plan to join good company when he seeks relief in the Bankruptcy Court. On the contrary, in this Chapter 13 case, Brian Howe (Debtor) seeks authority to reject a contract which he claims is executory and burdensome, so that he can keep using the name "Bad Company" when performing as the lead singer of his band. The events leading up to the immediate matter presented for this Court's consideration may be briefly summarized as follows:

The band known as Bad Company appeared on the music scene in 1974, first in England then around the world with its first hit single, "Can't Get Enough." The lead singer, Paul Rogers, originally from the group "Free" remained with Bad Company until 1983 when the band disbanded and the members went their separate ways.

In late 1985, the band resurfaced with the Debtor as its new lead singer and recorded "Fame and Fortune." The group, composed of Simon Kirke (Kirke), Mick Ralphs (Ralphs) and the Debtor, recorded five albums under a recording contract with Atlantic Recording Corporation dated February 6, 1986. As the result of irreconcilable differences between Kirke, Ralphs and the Debtor, the group was no longer able to function together as Bad Company. In order to resolve this impasse, the parties agreed to resolve their disputes by entering into an Agreement on June 1, 1994 (Agreement) whereby the Debtor severed his relationship with Kirke and Ralphs. (Debtor's Exhibit No. 2).

Pursuant to the Agreement, the Debtor resigned as a member of Bad Company, agreeing not to use the name Bad Company or any similar name in connection with any aspect of the entertainment industry. The Agreement authorizes the Debtor to refer to himself when performing as "Former Lead Singer of Bad Company." The Agreement further provides that in the event of a breach of any provisions of the Agreement, Kirke and Ralphs are entitled to injunctive relief against the Debtor. In consideration of the foregoing, the Debtor was entitled to receive the amounts of $125,000.00 upon the execu-

tion of the Agreement; the amount of $37,500 on the earlier of the completion of the recording of the next Bad Company album or not later than December 31 1994; and the amount of $37,500 on the earlier of the commencement of the first Bad Company North American tour after the release of the next "Bad Company" album or June 1, 1995. Lastly, the Agreement provides that in the event a dispute arises concerning any terms of the Agreement, the parties agree to submit the dispute to three arbitrators at the American Arbitration Association in New York City.

A dispute did arise and the same was submitted to arbitration pursuant to the Agreement. On January 7, 1998, the arbitrator made an award in the amount of $27,500.00 in favor of the Debtor and against Kirke and Ralphs. One might have concluded from the forgoing that this resolved all differences between the parties. Unfortunately, this is not what occurred.

To the contrary, the arbitration spawned additional litigation. One lawsuit was commenced by the Debtor against several defendants, including Kirke and Ralphs. Another lawsuit was brought by Kirke, Ralphs, Esskay, Ltd. and Wardpine, Ltd. against the Debtor and his corporation, Play Up Pompey, Inc. On February 26 1998, Kirke, Ralphs and Esskay, Ltd. and Wardpine, Ltd., two entities which were also parties to the Agreement, filed a suit against the Debtor and Play Up Pompey, Inc., in the United States District Court for the Southern District of New York for violations of the Trademark Infringement Lanham Act, Case No. 98–CV–1449.

On March 2, 1998, the parties entered into a Stipulation of Settlement (Stipulation) which was approved by the United States District Court on March 6, 1998. Paragraph 2 of the Stipulation provides that the June 1, 1994 Agreement shall remain in full force and effect with the following limited modifications. The Agreement permits the Debtor to perform in Baton Rouge, Louisiana; Harvey, Louisiana; Houma, Louisiana; Daytona Beach, Florida; and the House of Blues, Orlando, Florida, provided that the Debtor is featured as a "Former Member of Bad Com-

pany and/or Former Lead Singer of Bad Company." The Stipulation further provides limited permission for the Debtor to use certain promotional items with the concerts, such as one thousand hats and two thousand tee-shirts featuring the language, "Brian Howe with Bad Company." After these items are sold, the Debtor agreed not to produce any more merchandise which makes reference to his connection with Bad Company. Paragraph 6 of the Stipulation provides that the arbitration award granted to the Debtor on January 7, 1998, against Kirke and Ralphs in the amount of $27,500.00 shall be reduced to $10,000.00 which shall be paid on or before March 10, 1998, in full satisfaction of the arbitration award. Also, the Stipulation provides that the United States District Court for the Southern District of New York shall have continued jurisdiction for the specific purpose of enforcing the Stipulation. (Respondents' Exhibit No. 1).

The Stipulation was short lived because on March 16, 1998, the Debtor filed his voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code. On the very same day, the Debtor filed a Motion for Approval of Rejection of Executory Contract. The Debtor also filed an Emergency Motion for Order Staying District Court Case and for Sanctions for the alleged violation of the automatic stay. Since the original Motion to Approve Rejection of Executory Contract was not served properly, the same was denied on March 23, 1998.

On March 24, 1998, Kirke, Ralphs, Esskay, Ltd., and Wardpine, Ltd., filed an emergency Motion and sought relief from the automatic stay. Needless to say, the brewing controversy created an avalanche of pleadings and responses, including a Motion to disqualify the attorneys representing Kirke, Ralphs, et al. It appears that on April 1, 1998, Francine Miller (Ms. Miller) wrote to one Mr. Smith c/o Inside Talent in Charlotte, North Carolina, informing Mr. Smith that the Debtor's concert scheduled for May 26, 1998, cannot be advertised as a concert of Bad Company and the Debtor has no interest in Bad Company. Notably, Ms. Miller also pointed

out that the Debtor cannot be billed as "Bad Company/Former Lead Singer Brian Howe."

The immediate matter before this Court was filed on April 8, 1998, as Debtor's Emergency Second Amended Motion to Approve and Notice of Rejection of Executory Contracts with Wardpine, et al., (Motion to Reject). The Motion was heard as scheduled on April 24, 1998, at which time this Court heard argument of counsel for the respective parties who cited authorities in support of their respective positions.

What is and what is not involved in the immediate matter under consideration should be noted. The controversy under consideration does not involve an attempt by an artist to get out of a burdensome contract by rejecting it so that he can perform under a more attractive contract. *See e.g. In re Brown,* 1997 WL 786994 (E.D.Pa.). Nor does the case involve a nonexclusive license sought to be rejected. *See e.g. Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.,* 756 F.2d 1043 (4th Cir.1985) (nonexclusive license to utilize certain technological processes held to be executory contract), *cert. denied* 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). The present matter more closely resembles the situation where a debtor seeks to reject a covenant not to compete which has survived a terminated contract. *See e.g. In re Hughes,* 166 B.R. 103 (Bankr.S.D.Ohio 1994); *In re Oseen,* 133 B.R. 527 (Bankr.Idaho 1991); *In re Noco, Inc.,* 76 B.R. 839 (Bankr.N.D.Fla.1987). In each of these cases, the court concluded that the restrictive covenant which survived the terminated contract was not an executory contract which could be rejected by the debtor under Section 365 of the Bankruptcy Code.

In the present instance, even if one accepts the definition of an executory contract as formulated by Professor Vern Countryman, See Countryman, Executory Contracts in Bankruptcy, Part I, 57 Minn. L.Rev. 439, 460 (1973), the contract at issue is no longer executory. The obligation pursuant to the March Stipulation assumed by Kirke, et al., was a payment of $10,000.00. Counsel for the Respondent stated that the $10,000.00 was paid and that she is currently holding it in her trust account. Thus, there is nothing which remains to be performed. This record leaves no doubt that the original Agreement, even as modified by the Stipulation, has been fully performed.

In any event, what is involved here is really not to reject a contract which is no longer executory. Rather, the dispute centers around the Debtor's right to use the name Bad Company and the charge that using the name Bad Company would be a trademark infringement protected by the Lanham Trade–Mark Act, § 43(a), as amended, 15 U.S.C.A. § 1125(a). What the Debtor alleges is that based upon the alleged breach by Kirke, et al., of the March 2, 1998 Stipulation, which was approved by the U.S. District Court on March 6, 1998, the Debtor is no longer bound by the terms of the Stipulation and is free to use the name Bad Company.

The Debtor's argument is unpersuasive when one considers that the Debtor relinquished any rights he may have had to use the name Bad Company by executing the June 1, 1994 Agreement. In Paragraph 4 of that Agreement, the Debtor agreed not to use the name Bad Company or any similar name in connection with any aspect of the entertainment industry, including without limitation personal appearances, etc. He may refer to himself only as a former lead singer of Bad Company. In this connection, it should be noted that the March Stipulation as approved by the District Court expressly provides that the June 1, 1994 Agreement shall remain in full force and effect and shall be binding in all respects except as specifically set forth in the Stipulation. This being the case, this Court is satisfied that the Motion to Reject is not well taken and should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's Motion to Reject be, and the same is hereby denied.