**In re CARE GIVERS, INC., aka/dba Texas Healthcare Facilities and Decatur Convalescent Center, Debtor.**

**No. 389–32754–SAF–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Sept. 1, 1989.

St. Clair Newbern, III, Fort Worth, Tex., for Creditor, PTLA, Inc.

Gerald P. Urbach, Leah A. Hurley, Dallas, Tex., for Care Givers, Inc.

John Y. Bonds, III, Fort Worth, Tex., for Decatur–Bridgeport Joint Venture, Santa Rosa Convalescent Center Joint Venture, Western Oaks Health Care Center Joint Venture, Stevens Nursing Home Joint Venture.

D. Woodward Glenn, Dallas, Tex., for Citizens National Bank.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

Western Oaks Health Care Joint Venture, Santa Rose Convalescent Center Joint

Venture, Stevens Nursing Home Joint Venture, and PTLA, a corporation, move the court to deem six nursing home leases operated by the debtor, Care Givers, Inc., rejected as a matter of law under 11 U.S.C. § 365(d)(4) and for relief from the automatic stay under 11 U.S.C. § 362(d). After a preliminary hearing, the court held that § 365 governed the assumption or rejection of the six leases. To assume a lease of nonresidential real property, a debtor must file a motion to assume the lease or a motion to extend the time to assume within 60 days after the date of the order for relief, pursuant to § 365(d)(4). The debtor filed its motion to assume the six nursing home leases 62 days after the date of the order for relief. If the leases are governed by the provisions of § 365(d)(4), then they must be deemed rejected. If the leases are not governed by § 365(d)(4), then the debtor timely filed its motion to assume. The court conducted an evidentiary hearing on July 31, 1989, to address the issue of whether the six leases are nonresidential leases within the meaning of § 365(d)(4). Following the hearing the court modified the automatic stay to permit the movants to seek licensing to operate the six nursing homes should the court decide that the nursing home leases must be deemed rejected under § 365(d)(4). The court now concludes that the six nursing homes leases are not leases of nonresidential real property within the meaning of § 365(d)(4), the 60 day time limit does not apply to the debtor's six leases and the debtor's motion to assume the six leases is timely. Although written in narrative form, this memorandum opinion contains the court's findings of fact and conclusions of law required by Bankruptcy Rules 7052 and 9014. The court has jurisdiction over this core matter. 28 U.S.C. § 157(b)(1), (b)(2)(A) and (O).

## I. *Facts*

Care Givers, Inc., has leased from the movants and is licensed to operate the following six nursing homes, classified as intermediate care facilities for purposes of medicare/medicaid eligibility: Seguin Convalescent Homes, located in Seguin, Texas; Garden Villa Nursing Home, located in El Campo, Texas; Kingsland Hills Care Center, located in Kingsland, Texas; Stevens Nursing Home, located in Yoakum, Texas; Santa Rosa Convalescent Center, located in Tucson, Arizona; and Western Oaks Healthcare Center, located in Bethany, Oklahoma. To operate these nursing homes, Care Givers, Inc., must comply with the licensing requirements of the various state health departments and with federal criteria to maintain medicare/medicaid eligibility. The nursing homes admit residents upon doctors' orders. Residents have available twenty-four hour skilled nursing care. Residents may be ambulatory, semi-ambulatory, confined to wheelchairs or bedridden. Residents may stay in the nursing homes for short periods of time, for many years or for the rest of their lives. Many residents list their nursing homes as their residence for mail and for voter registration purposes. Residents have available to them recreational areas and kitchen/cafeteria facilities. While Care Givers is duly licensed to operate the nursing homes, the movants are not licensed to operate the homes, the movants are not party to the contracts between Care Givers and the various state health agencies, between Care Givers and the residents or between Care Givers and the nursing home employees. Care Givers has made substantial improvements in the real property which will revert to the movants in the event the leases are deemed rejected. Care Givers has also created going concern value in the nursing homes.

## II. *Discussion*

This court must determine whether the six nursing home leases fit within the provisions of § 365(d)(4). Section 365(d)(4) provides that "if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor." To determine the meaning of "an unexpired

lease of nonresidential real property under which the debtor is the leasee" the court applies the rules of statutory construction of the Bankruptcy Code established by the Supreme Court.

If the statutory scheme of the Bankruptcy Code is coherent and consistent, "there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). As in *Ron Pair*, "The task of resolving the dispute over the meaning of [§ 365(d)(4)] begins where all such inquires must begin: with the language of the statute itself.... In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the court is to enforce it according to its terms.'" 109 S.Ct. at 1030. The debtor is the lessee. The lease is of real property. The lease has not expired. People live on the real property. The lease is therefore partially residential and hence not "nonresidential."

The movants argue, however, that the court should focus on the nature of the lease, not on the use of the real property. If the lease can be characterized as a commercial lease, then, movants argue, the lease is nonresidential and falls under § 365(d)(4). The movants further argue that § 365(d)(4) applies even to a commercial lease for residential real property, and that the statute covers any commercial lease of real property.

▪ Movants reading of the statute cannot be grammatically reconciled with the statute's language. The Supreme Court instructs that the court must read § 365(d)(4) according to its grammatical structure. 109 S.Ct. at 1030. For the statute to have the meaning movants contend the adjective "nonresidential" should be transmuted into "commercial" and moved back before the word "lease." Congress could have so provided, but did not. The plain meaning of the phrase used in the statute, "lease of nonresidential real property," is not synonymous with the phrase "commercial lease of real property." In the statute the adjective "nonresidential"

modifies "real property" thereby focussing on the character of the real property, not the character of the lease. *See In re Independence Village*, 52 B.R. 715, 722 (Bankr. E.D.Mich.N.D.1985). In addition, upon rejection of a lease under § 365(d)(4), the statute requires immediate surrender of "such nonresidential real property." The plain language of the statute once again focusses on the real property, which is characterized as "nonresidential."

"The plain meaning of legislation should be conclusive except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of the drafters.' ... In such cases, the intention of the drafters, rather than the strict language, controls." *Ron Pair*, 109 S.Ct. at 1031. *See also, United States v. Scrimgeour*, 636 F.2d 1019, 1022–23 (5th Cir.1981) (citation omitted). The plain language of the statute produces a result consistent with, not at odds with, the congressional intent. Furthermore, considering the entire one sentence section, a contrary reading would produce a result not contemplated by Congress. Until the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), unexpired leases of residential and nonresidential property were governed by the same provisions of the Code. BAFJA introduced the restrictions on leases of nonresidential real property set out in § 365, including restrictions explicitly favoring shopping center landlords in § 365(b)(3). According to Senator Hatch, the purpose behind the § 365 amendments was in part to prevent tenant space in shopping centers from remaining vacant for long periods of time while a bankrupt tenant neither assumed nor rejected a lease. Senator Hatch noted that "During this time, the other tenants of the shopping center are hurt because of the reduced customer traffic in the shopping center. Tenants and landlords in other nonresidential structures have encountered similar problems." 130 Cong.Rec.S. 8894–95 (daily ed. June 29, 1984) *reprinted in* 1984 U.S.Code Cong. & Ad.News 576, 599 (statement of Senator Hatch). Senator Dole also commented on the purpose of the § 365 amendments, stat-

ing that the amendments provided "measures that correct problems for owners of shopping centers and their tenants, and other owners of real estate, whose leases are tied up in reorganization proceedings." 130 Cong.Rec.S. 8890 (daily ed. June 29, 1984) *reprinted in* 1984 U.S.Code Cong. & Ad.News 576, 587. The language of § 365(d)(4) does not restrict its provisions to shopping centers, but refers to "nonresidential real property." The comments of the Senators, especially those of Senator Hatch, express a concern for correcting the problem of long term vacancies in other nonresidential structures besides shopping centers. However, nowhere in the legislative history of BAFJA did Congress state any intent for § 365(d)(4) to be applied to residential structures. No legislative intent can be inferred from the legislative history which contradicts the plain language of the statute restricting § 365(d)(4) to nonresidential real property.

The six nursing homes which Care Givers, Inc. wishes to continue to operate are designed to provide residences and nursing care for people who live in them. The residents may live in the nursing homes for years or for the rest of their lives. While Care Givers holds licenses to operate the homes, movants do not. If § 365(d)(4) applied, absent timely assumption of the lease, that section would have required that the debtor immediately surrender the real property to the movants on 61st day after the date of the order for relief. On that day, no licensed entity would have been in a position to operate the nursing homes. The plain language of the statute would have produced an unsensible and unintended circumstance by requiring immediate surrender of real property where people live and depend upon a licensed operator. The residents and the governmental agencies would have been forced to confront an unintended predicament. Congress never contemplated that result. Rather that result seems contrary to the congressional concern with filling vacant space in nonresidential structures.

 The movants argue that the nursing homes have nonresidential as well as residential aspects and so should be characterized as nonresidential. The court is not persuaded that § 365(d)(4) applies to a property with mixed residential and nonresidential use. Section 365(d)(4) excepts landlords of nonresidential real property from the general rule which does not place a 60 day deadline on the assumption or rejection of executory contracts by the trustee or debtor-in-possession in Chapter 11 cases. Section 365(d)(4) also represents an exception to the fundamental policy in bankruptcy that creditors are to be treated equally, as landlords of nonresidential property are favored over landlords of residential property and over parties to other kinds of executory contracts. Since § 365(d)(4) represents an exception to the general rule which does not require assumption or rejection within 60 days and is an exception to the policy of equal treatment of creditors, the exception should be narrowly construed. *See In Re Independence Village,* 52 B.R. 715, 722 (Bankr.E.D.Mich.N.D. 1985) *citing, Lynch v. Johns–Manville Sales Corp.,* 710 F.2d 1194 (6th Cir.1983); *In Re Fulghum Constr. Corp.,* 706 F.2d 171 (6th Cir.1983); cert. denied, 464 U.S. 935, 104 S.Ct. 342, 78 L.Ed.2d 310. (holding that the general rule in Chapter 11 cases is that there is no 60 day deadline to assume or reject executory contracts and thus § 365(d)(4) should be narrowly construed). *See* S.Rep. No. 989, 95th Cong., 49, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 5835 ("Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally"); *see In Re Warren* 93 B.R. 710, 712 (Bankr.C.D.Cal.1988) (holding that exceptions to the general rule in bankruptcy that creditors are to be treated equally should be narrowly construed). Narrowly construing the exception of § 365(d)(4), if people reside on the real property, it is not nonresidential even if it is also used for nonresidential purposes. The court therefore finds that § 365(d)(4) applies only to property which is wholly nonresidential. Real property which has both residential and nonresidential aspects is not "nonresidential" within the meaning of § 365(d)(4).

*In Re Independence Village, Inc.,* supports this court's holding that the six nursing homes at issue are not nonresidential real property. 52 B.R. at 722. The debtor in *Independence Village* operated a 252 unit life-care facility for the elderly. The court found that since "the lease in question deals with residential real property, that is, property in which human beings reside, § 365(d)(4) does not apply." *Independence Village,* 52 B.R. at 722. The court reviewed the legislative history of § 365(d)(4) and its grammatical construction, which has been noted above.

The movants cite several cases in support of their contention that § 365(d)(4) does apply to the Care Givers, Inc., six nursing home leases. *See, In The Matter of Condominiums Administrative Services, Inc.,* 55 B.R. 792, 795 (Bankr.M.D.Fla. 1985) (holding that a lease for the land on which the debtor operated a mobile home park was a nonresidential lease because it was a commercial lease and "the character of [the property] is not really of any consequence") and *In Re Sonora Convalescent Hospital, Inc.,* 69 B.R. 134 (Bankr.E.D.Cal. 1986) (holding that a lease of a 36 bed convalescent hospital was a nonresidential lease, focussing, as did the court in *Condominiums Administrative Services,* on the character of the lease and not on the use of the property as a residence). This court respectfully disagrees with those holdings. Considering the grammatical structure of § 365(d)(4), its resulting plain language, and its legislative history, § 365(d)(4) does not apply to Care Giver's leases. Movants also cite *In Re Fillard Apartments, Ltd.,* 96 B.R. 397 (Bankr.S.D.Fla.1989) (holding that § 365(d)(4) applies to a lease of an apartment complex which was managed but not resided in by the debtor) and *In Re Southern Motel Associates,* 81 B.R. 112 (Bankr.M.D.Fla.1987) (applies § 365(d)(4) to the debtor's leases of various motels). In those cases the debtor apparently did not argue that the leases were of residential real property so the courts did not face the issue of whether § 365(d)(4) should be applied. In addition, in those cases where the debtor argued that the leased property was residential, the residents in the real property did not face the risks involved in this case.

The Code fully protects the movants. In the event of debtor delay in deciding to assume or reject, the landlord of residential real property may move to have the debtor assume or reject the lease. Section 365(d)(2). Here the debtor so moved within 62 days of the date of the order for relief. Care Givers shall obtain a setting for a hearing on its motion to assume. The court has modified the stay to permit the movants to seek appropriate licensing. If the court denies Care Giver's motion to assume, § 365 does not require immediate surrender of the real property which is an obligation imposed only on debtor-tenants of nonresidential real property under § 365(d)(4). Accordingly, the court can coordinate a transfer of possession to movants to minimize resident (and employee) disruptions. If this court grants the motion to assume, then, given the requirements of § 365, movants would be made whole and would have obtained what they bargained for. *See Matter of U.L. Radio Corp.,* 19 B.R. 537, 541 (Bankr.S.D.N.Y. 1982), *citing House Report* at 348, U.S. Code Cong. & Admin.News 1978, pp. 6304–6305; *Senate Report* at 59, U.S.Code Cong. & Admin.News 1978, p. 5845; *see N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984).

Accordingly,

IT IS ORDERED that the motions to have the leases of the nursing homes operated by Care Givers, Inc., be deemed rejected are DENIED.

IT IS FURTHER ORDERED that, subject to the prior modifications to the automatic stay to permit movants to seek appropriate licenses, the motions for relief from the automatic stay are DENIED without prejudice.

IT IS FURTHER ORDERED that Care Givers, Inc., shall obtain a setting for an evidentiary hearing on its motion to assume the leases.