**In re BONITA GLEN II, Debtor.**

**No. 92–13010–A11.**

United States Bankruptcy Court,
S.D. California.

April 12, 1993.

David J. Gallo, Fedynyshyn & Gallo, San Diego, CA, for debtor.

Robert E. Darby, Wendy L. Linder, Fulbright & Jaworski, Los Angeles, CA, for State Street Bank and Trust Co.

Herbert Hirsh, Trustee U.T.D., Michele M. Burgart, La Jolla, CA., Todd DerOvanesia, Jr., Karp and Richardson, San Diego, CA.

## MEMORANDUM OPINION

LOUISE DeCARL ADLER, Bankruptcy Judge.

Debtor Bonita Glen II ("debtor") moves this Court for an order determining and declaring that a ground lease with an apartment building constructed on the leased property does not constitute a lease of nonresidential real property for purposes of 11 U.S.C. § 365(d)(4).

The Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and General Order 312–D of the United States District Court for the Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### FACTS

Herbert Hirsh ("Hirsch"), as lessor, and Mike Foote Development Company ("Foote"), as lessee, entered into a ground lease for an initial period of 50 years with two 10–year extension options. The ground lease prescribed that Foote would construct an apartment building on the real property. On July 31, 1986, Foote assigned its interest in the ground lease to the debtor. In 1987, debtor built a 43–unit apartment building on the leased land.

On November 2, 1992, the debtor filed its voluntary petition under Chapter 11. After obtaining an extension of the time to assume or reject the lease, debtor filed this motion for an order declaring that the ground lease does not constitute a lease of nonresidential real property for purposes of § 365(d)(4). Hirsch objects on the grounds that at the time the lease was entered into, the property clearly was nonresidential and the provisions of § 365(d)(4) should apply.

The Court disagrees with Hirsch's characterization of the ground lease and finds that: 1) The ground lease does not constitute a lease of nonresidential real property for purposes of § 365(d)(4); and, therefore, 2) pursuant to § 365(d)(2), the debtor has until the confirmation of its plan of reorganization, or such earlier time as ordered by the Court, to assume or reject the lease.

### ISSUE

Whether a ground lease with an apartment building constructed on the leased property constitutes a lease of nonresidential real property for purposes of § 365(d)(4).

### DISCUSSION

■ It is well established that protection under § 365(d)(4) is given only to landlords who lease nonresidential real property. Section 365(d)(4) provides:

[I]f the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential property to the lessor. 11 U.S.C. § 365(d)(4).

The Bankruptcy Code ("Code") does not define the term "nonresidential" as used in

§ 365(d)(4), and leaves the Court to look elsewhere for clarification. The question becomes a matter of statutory interpretation. To interpret this statute, the Court must first examine the plain meaning of the words of the statute. *U.S. v. Barbier*, 896 F.2d 377, 378 (9th Cir.1990) (*citing Central Montana Elec. Power Coop. v. Administrator of Bonneville Power*, 840 F.2d 1472, 1477 (9th Cir.1988)).

Some courts have held that the adjective "nonresidential" modifies the term "real property" and thus does not focus on the character of the lease. *In re Care Givers, Inc.*, 113 B.R. 263, 266 (Bankr.N.D.Tex. 1989), and *In re Independence Village, Inc.*, 52 B.R. 715, 722 (Bankr.E.D.Mich. 1985). Other courts have defined "residential" by using its "common and approved usage." *In re Emory Properties, Ltd.*, 106 B.R. 318, 320 (Bankr.N.D.Ga.1989) (*citing* Sutherland, Statutory Construction § 46.01 at 74 (4th ed. 1987)). The "common and approved usage" of residential is defined as "pertaining to residence or residences and 'residence' means the places, esp. the house, in which a person lives or resides; dwelling place; home." *Emory*, 106 B.R. at 320 (*citing* THE RANDOM HOUSE COLLEGE DICTIONARY 1123 (rev. ed. 1975)). Both of these interpretations emphasize the use of the property rather than the purpose of the lease.

However, a minority of courts have held that although land is used for dwellings, it could be classified nonresidential due to the commercial purpose of the lease. *In re Sonora Convalescent Hospital, Inc.*, 69 B.R. 134 (Bankr.E.D.Cal.1986). In *Sonora*, the court held that the use of real and personal property for a nursing home was nonresidential in nature due to the commercial purpose of the lease. The court based its decision on the nature of the lease as income producing.

When the plain meaning of a statute is unclear, statutory interpretation requires an examination of the legislative history and intent surrounding the enactment of the statute. *Mobil Sales & Supply Corp. v. Panamax Venus*, 804 F.2d 541, 542 (9th Cir.1986). In 1984, Congress revised § 365 to strengthen the Code's protection of shopping centers. John T. Brooks, *Shopping Center Tenants In Bankruptcy: The Effect Of The 1984 Code Amendments*, U.Ill.L.Rev. 25 (1988). The 1984 Amendments to § 365 have been dubbed the "shopping center amendments" due to, among other things, the sponsorship and support they received from the International Council of Shopping Centers, which was instrumental in trying to solve some of the problems created by shopping center tenants who filed bankruptcy. *Id.*

Senator Hatch, one of the co-sponsors of S.B. 2297, which contained the proposed amendments, best explains the purpose behind the amendments: "[They are] in part to prevent tenant space in shopping centers from remaining vacant for long periods of time while a bankrupt tenant neither assumed nor rejected a lease." 130 Cong. Rec. S8894–95 (daily ed. June 29, 1984). They were also designed to protect other shopping center tenants who were hurt economically due to a decrease in customer traffic caused by the bankruptcy of a tenant. *Id.* Although Senator Hatch expressed some concern over long-term vacancies in other nonresidential structures besides shopping centers, there is no legislative history supporting an intent to include residential buildings. *Care Givers*, 113 B.R. at 267. It was Congress' concern about the uncertainty and delay for lessors in shopping centers that led to § 365 being amended to require a debtor to assume or reject within 60 days after the date of the order for relief. Allyson R. Abel, *Whether To Assume Or Reject A Lease—The Section 365 Dilemma*, 7 Bank.Dev.J. 125, 131 (1990).

After analyzing legislative intent, the Court must also consider case law construing § 365(d)(4). The majority of courts which have considered its application, narrowly construe it, focusing on the nature and use of the leased property. In narrowly construing § 365(d)(4), they hold that if people are living on the real property, it is residential in nature, despite the fact there

may be a commercial purpose underlying the use.[1]

Hirsch asks this Court to consider the nature and type of his lease in determining whether it is residential or nonresidential for purposes of § 365(d)(4). He contends that at the time the lease was entered into in 1984, the real property was unimproved and for that reason the lease should be classified as nonresidential. However, Hirsch neglects the fact that when he entered into the lease, it was contemplated by the parties that an apartment building would be constructed on it. Hirsch knew the lease was going to be used in a residential manner. He cannot now argue that the property is nonresidential because at one time the property was unimproved land.

Further, Hirsch argues that debtor is using the ground lease with the apartment building constructed on it for a commercial purpose. Relying on the holding in *Sonora,* he points to the fact that the debtor collects rents to make a profit, which is clearly a commercial use of the property. *Sonora's* holding that commercial use of a property results in its classification as nonresidential is clearly a minority interpretation. The majority of courts who have considered this issue hold that § 365(d)(4) does not apply to a lease for residential real property, even when the debtor uses it for a commercial purpose. *See* fn. 1. This Court rejects the *Sonora* interpretation and declines to adopt it.

█ Hirsch argues that the debtor's delay in assuming or rejecting the lease is creating uncertainty for Hirsch as well as the other creditors of the estate. Hirsch asserts it is necessary for the effective administration of the estate to have the debtor assume or reject the lease as soon as possible. This argument is untenable.

While the debtor's delay may be creating uncertainty for Hirsch, § 365's amendments were not intended to give comfort to all landlords. Only those leasing nonresidential property may rely on the subsection (d)(4) provision. Nevertheless, the Code fully protects Hirsch. If he can show real prejudice rather than the mere discomfort of "uncertainty", he may move the Court to set an earlier date by which the debtor must assume or reject the lease. If the debtor is not making ground lease payments, he may move the Court to order such payments be made until the debtor assumes or rejects the lease. Furthermore, Hirsch overlooks the obvious: The debtor has built an apartment building on the leased property. In all likelihood, the debtor will not walk away from its substantial investment. Someone—if not the debtor, then its mortgage lender—will eventually assume the lease.

A finding that the ground lease underlying the apartment building is residential is consistent with the plain meaning, the legislative intent and majority of court decisions construing § 365(d)(4). The Court notes that subsection (d)(4) creates an exception to the general scheme of § 365. Even though § 365(d)(4) may have been intended to apply to leaseholds other than those in shopping centers, the term "nonresidential" is not synonymous with commercial. This Court concludes the ground lease does not constitute a lease of nonresi-

1. *See In re Lippman,* 122 B.R. 206, 210 (Bankr. S.D.N.Y.1990) (In order for property to be classified as nonresidential for purposes of § 365(d)(4), people must not reside or dwell on the real property. But, where people do live on the real property, the lease is residential real property and § 365(d)(4) does not apply.); *In re Care Givers, Inc.,* 113 B.R. at 266 (Since people were living at the nursing home on the real property, the lease was residential and therefore not nonresidential.); *In re Independence Village,* 52 B.R. at 722 (A life-care facility for the elderly was residential real property because people resided on the property.); *Secretary of the Army v. Terrace Apts., Ltd.,* 107 B.R. 382 (Bankr. N.D.Ga.1989) (Where a long-term ground lease was operated as an apartment complex, the court found the lease residential in nature and that § 365(d)(4) was inapplicable.). Although the court in *Emory,* 106 B.R. at 320, found that a hotel is nonresidential within the meaning of § 365, it also held that apartment complexes are residential leases for purposes of § 365. The *Emory* court distinguished between a hotel and apartment complex, stating:

[A] hotel is not residential in the same way that an apartment complex is in that people actually reside and make their homes in the later whereas they just temporarily stay in the former. *Id.*

dential real property for purposes of § 365(d)(4) and that pursuant to § 365(d)(2), the debtor has until the confirmation of its plan of reorganization, or such earlier time as ordered by the Court, to assume or reject the lease.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to FRBP 7052. Debtor's counsel is directed to prepare an order in conformance with this Memorandum Decision with 10 days from its entry.