In re TEXAS HEALTH ENTERPRISES, INC., HEA Management Group, Inc., Health Enterprises of Michigan, Inc. and Health Enterprises of Oklahoma, Inc., Debtors.

Bankruptcy Nos. 99–42469–99–42472.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

July 27, 2000.

---

Mark E. MacDonald, MacDonald & Schuble, L.L.P., Dallas, TX, for debtors.

James Montgomery, Soules & Wallace, San Antonio, TX, for Lytle Nursing Home, Inc. and James Cotter.

Mike Sutherland, McConnell & Goodrich, Fort Worth, TX, for Official Committee of Unsecured Creditors.

## *OPINION*

DONALD R. SHARP, Bankruptcy Judge.

Now before the Court for consideration is the Motion of Lytle Nursing Home, Inc., to Confirm Rejection of Executory Contract And/Or Unexpired Lease and Compel Debtor, Texas Health Enterprises, Inc., To Immediately Surrender Real Property by an Order of Possession and for Alternative Relief (the "Motion") filed by Lytle Nursing Home, Inc. ("Movant" or "Lytle"), a creditor in these jointly administered bankruptcy cases. The Court has reviewed the Motion and the record in these cases. The Court considered the pleadings filed and the evidence adduced in prior hearings in regard to the Lease that is the subject of the Motion. This opinion constitutes the Court's findings of fact and conclusions of law required by

Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

## FACTUAL AND PROCEDURAL HISTORY

Texas Health Enterprises, Inc. ("THE"), HEA Management Group, Inc., Health Enterprises of Michigan, Inc., and Health Enterprises of Oklahoma, Inc. (the "Debtors") filed their voluntary petitions under Chapter 11 of Title 11 of the U.S.Code on August 3, 1999. Since the petition date, Debtors have managed their property and operated their business as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. Texas Health Enterprises, Inc. is the second largest nursing home operator in the State of Texas and currently operates 78 homes in the state. Health Enterprises of Michigan, Inc. operates eight nursing homes in the State of Michigan. Health Enterprises of Oklahoma, Inc. was a sublessee in the State of Oklahoma. Debtors allege that this case was precipitated by certain changes in the Federal laws effecting the procedures pursuant to which Medicare and Medicaid reimburse health care providers of the Debtors' type.

Previously, the Debtor filed a Motion to Assume Real Estate Leases at Turner Nursing Home, Hillside Manor Nursing Center and Lytle Nursing Home Pursuant to Section 365 and Bankruptcy Rule 6006 which was denied by this Court based upon the finding: no offer to cure non-monetary defaults under the Sublease of Lytle Nursing Home entered into by and between Lytle Nursing Home, Inc., and the debtor, dated March 28, 1988 and the Management Contract for Lytle Nursing Home by and between Lytle Nursing Home, Inc. and the Debtor (referred to hereinafter jointly as the "Lease" ) as extended, non-performance of THE's duties pre- and post-petition and lack of adequate assurance of future performance under the Lease. An appeal of this Court's order has been filed. Until the appeal is decided, this Court's findings of fact and conclusions of law on these issues

remains the law of the case and is binding upon all parties. Now this Court must address the Motion before it seeking this Court's declaration that the Lease is rejected and seeking an order for THE to immediately surrender the Lytle Nursing Home to Movant.

Movant seeks the rejection of the Lease on two separate grounds. First, Movant argues that the Lease is rejected as a matter of law pursuant to 11 U.S.C. § 365(d)(4) since it is a lease of non-residential real property which was not assumed within 60 days of the filing of the bankruptcy petition. Second, the Movant argues that the Lease should be declared rejected by this Court under the provisions of 11 U.S.C § 365(b)(1)(C) because Debtor is unable to cure previous defaults and unable to provide adequate assurance of future performance under the terms of the Lease.

This Court concludes that there is no need for a hearing on this matter. As to the argument that the Lease has been rejected as a matter of law under 11 U.S.C. § 365(d)(4), there is no necessity for an evidentiary hearing since this is purely a legal question for the Court's determination. As to the second argument a hearing on the identical issues raised in the Motion has already occurred at which it was determined that THE is not in a position to assume the Lease as a result of its inability to cure certain non-monetary defaults or provide adequate assurance of its future performance under the terms of the Lease as required pursuant to 11 U.S.C. § 365(b)(1)(C). These issues do not need to be relitigated and such relitigation would be prevented by the doctrine of collateral estoppel.

## DISCUSSION

█ Given the issues as framed by the pleadings and given the history of this case, Movant would be entitled to have the Lease declared rejected and to proceed under applicable law. However, this Court cannot fully grant the relief sought

for the reason that this Lease is not simply a lease of non-residential real property as presented in the pleadings. It involves the patients and residents in the nursing home in addition to the financial interests of the parties who entered into the Lease agreement. The matter is not one of first impression and has been considered in *In re Care Givers, Inc.,* 113 B.R. 263 (Bankr. N.D.Tex.1989) and *In re Independence Village, Inc.,* 52 B.R. 715 (Bkrtcy. E.D.Mich.1985). *Cf. In re Sonora Convalescent Hospital, Inc.,* 69 B.R. 134 (Bkrtcy. E.D.Cal.1986).

In *In re Care Givers, Inc.,* 113 B.R. 263 (Bkrtcy.N.D.Tex.1989), the lessors sought to have six nursing home leases declared rejected by operation of 11 U.S.C. § 365(d)(4). The *Care Givers* Court narrowly construed the language of § 365(d)(4) concluding that if people reside on the real property, it is not nonresidential even if it is also used for nonresidential purposes. The *Care Givers* Court found that § 365(d)(4) applies only to property which is wholly nonresidential and that real property which had both residential and nonresidential aspects is not "nonresidential" within the meaning of § 365(d)(4). *Ibid.* at 267–68.

The *Care Givers* Court reviewed the legislative history of § 365(d)(4) and the purposes of the Bankruptcy Amendments and Federal Judgeship Act of 1984 which favored shopping center landlords and sought to prevent extended vacancies of tenant space in shopping centers. The *Care Givers* Court also cited to *In re Independence Village, Inc.,* as support for its holding that the six nursing homes at issue did not qualify as nonresidential real property. The debtor in Independence Village operated a 252 unit life-care facility for the elderly. The court found that since "the lease in question deals with residential real property, that is, property in which human beings reside, § 365(d)(4) does not apply." *Independence Village,* 52 B.R. at 722. The *Care Givers* Court disagreed with other courts which had held

that "the character of [the property] is not really of any consequence". See, inter alia, *In Re Sonora Convalescent Hospital, Inc.,* 69 B.R. 134 (Bkrtcy.E.D.Cal.1986) (holding that a lease of a 36 bed convalescent hospital was a nonresidential lease, focusing, as did the court in [*In re Condominium Administrative Services,* 55 B.R. 792 (Bankr.M.D.Fla.1985) ] on the character of the lease and not on the use of the property as a residence). This Court must agree with the *Care Givers* Court and find here, in similar circumstances, that § 365(d)(4) does not apply to the Lytle Nursing Home Lease.

 The Motion by Lytle actually seeks two forms of relief. The Motion asks that the Court declare the Lease rejected and order immediate turnover of the property to Lytle. This Court can declare the Lease rejected based on its earlier hearing and determination that THE could not cure existing defaults or provide adequate assurance of future performance in order to maintain the Lease. However, rejection of a lease and termination of a lease are two different things. In re *Drexel Burnham Lambert,* 138 B.R. 687 (Bkrtcy.S.D.N.Y.1992); In re *Udell v. Standard Carpetland USA, Inc.,* 149 B.R. 908 (N.D.Ind.1993) Even though this Court can readily declare the Lease rejected, it cannot precipitously terminate the Lease given the interest of the residents of this nursing home.

.Neither party to this dispute spent any time focusing on the rights or the needs of the elderly patients who live in this nursing home and depend on the staff of this nursing home for their every need. THE argued from the standpoint that this is a profitable location (although one might wonder about the profitability if THE were properly meeting its obligations) and Lytle argued that the monetary and nonmonetary defaults were detrimental to its financial well being. No one focused on the residents nor what would happen to the residents in the event of a precipitous termination and the ordering of THE to

deliver possession to Movant. The Unsecured Creditors' Committee appeared and urged that THE be allowed to assume this Lease because it would generate funds for the unsecured creditors. No one appeared on behalf of the residents and no one acknowledged that they even have a stake in the outcome of this proceeding.

As the Court understands the situation, one cannot operate a nursing home in the State of Texas without being properly licensed. Apparently, THE holds certain licenses that authorize it to operate and whether or not Lytle owns licenses that would authorize it to immediately assume the operation of this nursing home is unclear. The State of Texas has taken no position in this part of the dispute and has taken virtually no position in this bankruptcy from the beginning. This Court is unsure as to the effect an order requiring THE to immediately surrender possession of the property to Lytle would have. Whether it would necessitate the immediate relocation of all of the patients or trigger some action by the State of Texas because someone is operating in violation of the regulations, is simply not known. Therefore, this Court believes that the Motion must be granted in part to declare the Lease rejected but that the request ordering the immediate delivery of possession of the premises to Lytle must be denied at this time. It's not that this Court does not believe that Lytle is entitled to possession of the premises, it is simply that this Court is uncomfortable issuing such an order until there is a showing that the needs of the residents of the nursing home will be amply cared for. Any order requiring THE to deliver possession of these premises to Lytle must be accompanied by assurance that there will be a continuity of care for the patients and a continuity of compliance with Texas regulations so that the lives of the elderly patients in this nursing home will be disrupted as little as possible. Accordingly, the Court is prepared to issue an order recognizing the rejection of the Lease and conditioning an order requiring the delivery of possession of the nursing home to Lytle on a showing to this Court that a plan for continuity of care and operation within the regulatory guidelines of the State of Texas is in place. If the parties cannot agree on the terms of an orderly transfer of possession from THE to Lytle, then either party is free to present a plan to this Court for approval and incorporation into an order of possession to which Lytle is clearly entitled. A separate order will be entered in accordance with this opinion.