IN THE MATTER OF: MEMORY LANE OF BREMEN, LLC, Southeast Senior Care Management Group, LLC, Memory Lane Assisted Living of Bowdon, LLC, Memory Lane Assisted Living, LLC, Debtors.

CASE NUMBER 15–10371–WHD
15–10374–WHD
15–10373–WHD
15–10372–WHD

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Signed June 26, 2015

J. Nevin Smith, Smith Conerly LLP, Carrollton, GA, for Memory Lane of Bremen, LLC.

## *ORDER*

W. Homer Drake, U.S. Bankruptcy Court Judge

Before the Court is the Motion for Rejection and Termination of Lease, Relief from the Automatic Stay, and for Turnover of Premises and Financial Documents (hereinafter the "Motion"), filed in these related Chapter 11 cases by Dr. Hanimi and Mrs. Challa (hereinafter "Movants"). This matter constitutes a core proceeding, over which the Court has subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(A), (G), (O); § 1334.

### FACTS AND PROCEDURAL HISTORY

Memory Lane of Bremen, LLC (hereinafter "Bremen") and Southeast Senior Care Management Group, LLC (hereinafter "Southeast") filed voluntary petitions under Chapter 11 of the Bankruptcy Code[1] on February 20, 2015. Bremen, along with two other related debtors— Memory Lane Assisted Living, LLC (hereinafter "Ocala") and Memory Lane of Bowdon, LLC (hereinafter "Bowdon" and collectively with Bremen, Ocala, and Southeast, the "Debtors")—operate three separate senior long-term care facilities in Bremen and Bowdon, Georgia, and Ocala, Florida (hereinafter the "Bremen Facility", the "Bowdon Facility", and the "Ocala Facility", and collectively, the "Facilities"). John Cheney is the sole member of each of the Debtors and, along with the vice-president of operations, Anita Hellmig, manages the Debtors' operations.

On March 17, 2015, the Court directed the appointment of a patient care ombudsman in the cases of Bremen, Bowdon, and Ocala. The United States Trustee selected Melanie McNeil, the Georgia Long–Term Care Ombudsman, to serve in the Bremen and Bowden cases and Kathryn Hyer to serve in the Ocala case.

The Movants purport to own the various pieces of real property (hereinafter collectively the "Premises") upon which Bowdon, Bremen, and Ocala operate the Facilities. The Movants have asserted that the arrangement between the Movants and the Debtors is that of landlord and tenant. Specifically, the Movants contend that Southeast leases from the Movants the real property used to operate the Bowdon Facility and the Ocala Facility, while Bremen leases from Dr. Challa the property used to operate the Bremen Facility.

While the Debtors acknowledge the existence of executed, written documents that appear to be leases of the Premises, the Debtors have argued that the substance of the relationship between the parties is not one of landlord and tenant. Rather, the Debtors assert that a partnership exists between Dr. Challa and Cheney, through which Dr. Challa supplied the real property and cash for renovations and construction, while Cheney contributed cash, personal property, and business management expertise (including the ability to obtain a license to operate the Facilities). The Debtors contend that both Dr. Challa and Cheney did so with the expectation that the partnership would acquire a certain number of operating facilities, and the partners would share in their ownership in some unspecified proportion. Consequently, the Debtors paint Dr. Challa as an equity investor in some form of business venture with Cheney, rather than the sole owner of the Premises with an unexpired lease of real property that must either be assumed or rejected by the Debtors. Although the Debtors have not presented fully their legal argument on this point, the Court assumes that, under the Debtors' theory, the "partnership" that allegedly owns the Premises has entered some form of arrangement with regard to the

---

1. 11 U.S.C. §§ 101, et seq.

Premises, through which the Debtors occupy the Premises, as the Debtors have asserted no ownership interest in the Premises.

On March 16, 2015, the Movants filed the instant motion to compel rejection of the purported leases and for relief from the automatic stay to permit the Movants to dispossess the Debtors of the Premises. Further, the Movants seek the turnover of the Debtors' financial and business documents. It appears that the Debtors have made no post-petition payments to the Movants, and the Movants contend that the Debtors have also failed to make necessary repairs to the Bremen and Bowdon Premises, which, under the purported leases, would be the Debtors' responsibility. The Movants also assert that the Movants' insurance on the Premises was at risk of being cancelled due to Southeast's failure to make repairs pursuant to an inspection by the insurance company, which poses a risk of harm to the Movants' interest in the Premises. The Movants' primary argument, however, is that their interest in the Premises is not adequately protected because the Movants are unable to obtain access to the Premises or payment of rent for their use, while they remain obligated to pay debt service, property taxes, and insurance in order to retain the Premises.

Consequently, in an amendment to the Motion, the Movants urge the Court to compel the Debtors to reject the "leases" because: (1) the Debtor do not have the financial ability to make the post-petition lease payments as they come due, as required by section 365(d)(3); and (2) in order to assume the leases, the Debtors would be required to cure all defaults or provide adequate assurance that such default will be cured promptly, which the Debtors cannot do. Finally, the Movants allege that, in November 2014, the State of Florida Agency for Health Administration (hereinafter the "FAHA") filed a complaint to revoke Cheney's license to operate the Ocala Facility and issued a certified letter to the Debtor in which the FAHA "denied the renewal application of [Ocala]." At the last hearing on this matter, Cheney testified that he was currently operating the Ocala Facility with a temporary, but valid, license while he appeals the FAHA's decision.

At an earlier hearing on April 29, 2015, the Debtors opposed the Movant's request to lift the stay and requested additional time in order for the nature of the Cheney/Challa relationship to be determined in a suit filed by Cheney in the Superior Court of Haralson County—*Cheney v. Challa*, Case No. 15–CV–140–M (Sup. Ct. Ga.) (hereinafter the "State Court Action"). After considering the fact that the bankruptcy cases had been pending for only two months and the three facilities were operating with satisfactory reports from the appointed patient care ombudswomen, the Court concluded that maintaining the *status quo* by leaving the stay in place while the Debtors obtained a decision as to the validity of the Movants' leases would be in the best interest of the Debtors' bankruptcy estates, as well as the residents of the Facilities. The Court conditioned this ruling on the Debtors' making a monthly payment to the Movants that would ensure that their interest in the Premises was adequately protected throughout the litigation. As the parties could not agree upon a suitable amount for such a payment, the Court held an evidentiary hearing on May 29, 2015, and June 2, 2015, and took the matter under advisement.

### Conclusions of Law

The Movants seek enforcement of the language in section 365(d)(3), which requires a debtor-lessee under a lease of nonresidential real property to perform timely all obligations under the lease. The

Movants also assert that the Court should compel the Debtors to reject the leases and lift the automatic stay to permit the Movants to exercise their state law rights with regard to the Premises. The reason given for this assertion is that the Debtors cannot demonstrate an ability to assume the leases in accordance with section 365(b). The Debtors essentially ask the Court for more time to establish that none of these provisions apply in this case because, as a matter of economic substance, *bona fide* leases do not exist between the Movants and the Debtors. *See generally In re PCH Assocs.*, 804 F.2d 193, 200 (2d Cir.1986) ("[S]ection 365, as applied by bankruptcy courts, incorporates the requirement that leases failing to meet the 'bona fide' definition are not to be treated as leases for purposes of the Bankruptcy Code.").

Under section 365(d)(3), a Chapter 11 debtor in possession must "timely perform all the obligations of the debtor" during the time between the filing of the petition and the assumption or rejection of a nonresidential lease of real property. 11 U.S.C. § 365(d)(3). Section 365(d)(4) further provides that "an unexpired lease of nonresidential property under which the debtor is the lessee shall be deemed rejected ... if the trustee does not assume or reject the unexpired lease by the earlier of" the date that is 120 days after the date of the order for relief, or the date of the entry of an order confirming a plan. *Id.* § 365(d)(4). Absent the application of section 365(d)(4), section 365(a) of the Bankruptcy Code provides that a debtor in possession may assume or reject any executory contract or unexpired lease of the debtor. *Id.* § 365(a). Therefore, unlike a Chapter 7 case, in a Chapter 11 case, the debtor's unexpired residential leases are not automatically deemed rejected, and a debtor in possession is generally permitted to assume or reject an unexpired residen-

tial lease at any time prior to confirmation of a plan. *Id.* § 365(d)(2).

■ First, even if *bona fide* leases exist between the Movants and the Debtors, they are not leases of nonresidential real property. *See In re Independence Vill., Inc.*, 52 B.R. 715, 722 (Bankr.E.D.Mich. 1985) (agreeing with the debtor that a lease of property used by the debtor to operate a life-care facility was not a lease of "nonresidential real property," as people resided in the leased property and the fact that the debtor corporation did not reside thereupon was irrelevant); *see also In re Care Givers, Inc.*, 113 B.R. 263 (Bankr. N.D.Tex.1989) (holding that leases of real property upon which the debtor operated senior nursing homes were not leases of nonresidential real property); *Matter of Terrace Apts., Ltd.*, 107 B.R. 382, 383 (Bankr.N.D.Ga.1989) (Kahn. J.) (agreeing with the reasoning of the court in *Independence Village* that the nature of the property, rather than the nature of the lease, is relevant to determining whether section 365(d)(4) applies and holding that a lease of property upon which the Chapter 11 debtor provided low-cost rental housing was not a lease of nonresidential real property). Accordingly, if there are *bona fide* leases, "unless otherwise ordered or prohibited by another section of the Bankruptcy Code, the Debtor[s have] until confirmation of [their] plan of reorganization to assume the lease[s]," *Terrace Apts., Ltd.*, 107 B.R. at 384, and the requirement imposed by section 365(d)(3) to timely perform the lease obligations is also not applicable. Therefore, to the extent the Movant's seek to compel the Debtors to comply with section 365(d)(3), or rely upon section 365(d)(4) for a finding that the leases have been deemed rejected, the Motion may be denied without the necessity of determining whether these are *bona fide* leases.

That being said, under section 365(d)(2), "on the request of any party" to an unexpired lease, the Court "may order the [debtor in possession] to determine within a specified period of time whether to assume or reject" any unexpired lease. 11 U.S.C. § 365(d)(2). When determining whether to compel a Chapter 11 debtor in possession to decide whether to assume or reject an executory contract or unexpired lease, a bankruptcy court should ensure that assumption or rejection occurs "within a 'reasonable time,'" with "[w]hat constitutes a reasonable time" being "left to the bankruptcy court's discretion in light of all relevant facts and circumstances." *In re Cabi SMA Tower I, LLLP*, 2011 WL 1321366, *2 (Bankr.S.D.Fla. Apr. 5, 2011). The movant bears the burden of demonstrating cause to shorten the debtor's time to decide to assume or reject a lease. *In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 429 (Bankr.S.D.N.Y.2012).

At the first hearing on this matter, the Court recognized that it would not be reasonable to compel the Debtors to decide to assume or reject the leases until the threshold issue of whether there are *bona fide* leases has been resolved, either by the State Court or by this Court. Likewise, under the unique facts of this case, the Court concluded that the Movants' request to terminate the automatic stay to permit the Movants to dispossess the Debtors from the Premises was premature. Section 362(d)(1) provides that "the court shall grant relief from the stay ... for cause, including the lack of adequate protection of an interest in property of such party in interest," and such cause is generally found where it is clear that the debtor has no ability to assume an unexpired lease, *see generally In re Lucash*, 370 B.R. 664, 670 (Bankr.E.D.Va.2007); *In re Hernandez*, 287 B.R. 795, 807 (Bankr.D.Ariz.2002). Here, however, no determination has yet been made as to whether there is anything to assume in these cases.

The Debtors have also demonstrated that whatever ownership interest the Movants have in the Premises is adequately protected while the stay remains in place. The testimony presented at the hearing established that the values of the Premises are not depreciating. Rather, the Debtors' expert witness on valuation, William Edmondson, testified that the values of the Premises would either increase or remain constant as the local population ages and the demand for more senior care facilities grows. While the Movants have presented evidence regarding the conditions of the Bremen and Bowdon Premises, the evidence persuades the Court that the conditions of the Bowdon and Ocala Premises are not deteriorating as a result of the imposition of the automatic stay in a manner that would require the Court to lift the stay at this time or to order the payment of periodic adequate protection payments.

With regard to the Bremen Premises, however, at the last hearing held on this matter, Cheney announced Bremen's intention to cease operations and close the Bremen Facility. It is now clear that Bremen lacks any equity in the Bremen Premises and that the Bremen Premises are not necessary for an effective reorganization. Accordingly, the Court finds that lifting the automatic stay to permit the Movants to exercise whatever state law rights they may have in the Bremen Premises is appropriate, pursuant to section 362(d)(2).

As of this time, the Court finds that the Bowdon and Ocala Premises remain necessary for the Debtors' effective reorganization. Therefore, the Court will allow Southeast a very limited, additional time period in which to establish the nature of its rights with regard to the Premises. As the cases are now four months old, however, the Debtors must be prepared to show the Court that progress has been made in the State Court litigation

and must address the concerns raised by the United States Trustee's recently filed motion to dismiss the Debtors' cases.[2] If the Debtors cannot do so, the Court will grant the Movants relief from the stay as to the Bowdon and Ocala Premises following a further hearing to be held in these cases on the basis that the Bowdon and Ocala Premises are not necessary for an effective reorganization.

The Court will also exercise its discretion to condition the continuation of the automatic stay with regard to the Bowdon and Ocala Premises on the Debtors' setting aside an amount sufficient to account for the likelihood that, regardless of what the State Court decides, the Debtors will owe to some entity administrative rent for the post-petition use of the Bowdon and Ocala Premises. *See* 11 U.S.C. § 503(b)(1)(A); *see also In re Greenfield Dry Cleaning & Laundry, Inc.*, 249 B.R. 634, 644–45 (Bankr.E.D.Pa.2000) (holding that licensor was entitled to administrative expense priority claim where debtor remained in possession post-petition of real property under a license agreement); *In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 432 (Bankr.S.D.N.Y.2012) (noting that a lessor of intellectual property would be entitled to payment as an administrative expense claim for post-petition use of its property). Such rent will be payable either to the Movants or to the alleged "partnership" between Dr. Challa and Cheney. It is in the best interest of the estate that funds be set aside monthly to pay post-petition rent. Although the Court was presented with no evidence by either party that would assist the Court in determining an appropriate amount for such a purpose, the Debtors proposed that a payment to the Movants in the amount of $4,150 per month for Bowdon and $3,200 per month for Ocala would adequately pro-

tect the interests of the Movants while the stay remains in place. The Court, therefore, assumes that Bowdon and Ocala would have the ability to set these funds aside on a monthly basis to ensure that some funds will be available to cover the post-petition rent expense. Consequently, within ten (10) days of the date of the entry of this Order, Bowdon and Ocala shall remit to their counsel funds for May and June, and the Debtors' counsel shall file with the Court an affidavit evidencing the receipt of such funds. The Debtors shall remit the funds for July on or before July 20, 2015, and thereafter, on a monthly basis upon the 20th of each month. These payments will be made without prejudice to the rights of any party to assert that a greater or lesser amount of post-petition rent is owed.

Finally, although the Court has been inclined to give the Debtors some leeway to resolve the issue of the "leases" in the State Court Action, these cases have now been pending for four months, and the United States Trustee has filed motions seeking the dismissal of the Bremen, Bowdon, and Ocala cases. In conjunction with the hearing on the United States Trustee's motions to dismiss, the Court will conduct a further hearing on the Motion to consider any additional evidence or new developments regarding the likelihood of an effective reorganization involving the Bowdon and Ocala Premises and also to obtain an update on the progress of the State Court Action.

## Conclusion

For the reasons stated above, the Motion for Rejection and Termination of Lease, Relief from the Automatic Stay, and for Turnover of Premises and Financial Documents is **GRANTED** in part and continued in part, subject to the compli-

---

**2.** *See* Case No. 15–10371 (Bremen), Docket No. 44; Case No. 15–10372 (Ocala), Docket No. 28; Case No. 15–10373 (Bowdon), Docket No. 29.

ance of Bowdon and Ocala with the above-stated terms.

**IT IS ORDERED** that the automatic stay as it pertains to the Bremen Premises is terminated, pursuant to section 362(d)(2).

**IT IS FURTHER ORDERED** that the Court will hold a further hearing on the remainder of the relief requested in the Motion on **July 22, 2015, at 2:00 p.m.** in Courtroom Second Floor, 18 Greenville Street, Newnan, Georgia.

**IT IS ORDERED**